1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7
8

EUGENE A. MAUWEE, SR., et al.,            )            3:06-CV-0122-RCJ (VPC)
                                          )
9                    Plaintiffs,          )
                                          )
10                                        )      **REPORT AND RECOMMENDATION**
        vs.                               )      **OF U.S. MAGISTRATE JUDGE**
11                                        )
BILL DONAT, et al.,                       )
12                                        )
                     Defendants.          )
13 _____)

14          This Report and Recommendation is made to the Honorable Robert C. Jones, United States

15   District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.

16   § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

17          Before the court is defendants' motion to dismiss (#13).  Plaintiffs opposed (#20) and defendants

18   replied (#21).  The court has thoroughly reviewed the record and the papers filed herein and recommends

19   that defendants' motion to dismiss (#13) be granted and plaintiffs' complaint be dismissed without

20   prejudice and with leave to amend.

21          **I.  History and Procedural Background**

22          Plaintiffs, Eugene Mauwee, Jr. ("Mauwee"), an inmate currently under the supervision of the

23   Nevada Department of Corrections ("NDOC"), and the Northern Continental Spiritual Circle Council

24   ("Circle")[1] bring this complaint pursuant to 42 U.S.C. § 1983, 41 U.S.C. § 2000bb , the Religious

25   Freedom  Restoration  Act  ("RFRA"),  and  42  U.S.C.  §  2000cc-1,  the  Religious  Land  Use  and

26

27          [1]Apart from Mr. Mauwee, plaintiffs do not identify the other individuals who are members of
     the Circle. The complaint refers to several inmates who may assume that they are parties to this action
28   because they are members of the Circle, but no such allegation is made in identifying the plaintiffs in
     this action.

1    Institutionalized Persons Act ("RLUIPA") (#10).  Plaintiffs contend that they are successors in interest

2    to the proceeding entitled, "Dennis T. Mickel vs. Charles L. Wolff, Jr., et al.," Case No. CV-N-79-239-

3    ECR. ("Mickel")  *Id.*  Defendants are NDOC, Bill Donat, warden of Nevada State Prison ("NSP"), James

4    Baca, assistant warden of programs at NSP.  *Id.*

5            Plaintiffs are general population inmates who were housed at NSP during the period of time

6    outlined in the complaint, and they allege that defendants violated their rights of free expression of

7    religion when protective custody inmates housed at NSP were permitted to use the Native American

8    sweat lodge and sacred ground located on NSP premises, which is used for Native American religious

9    practices.  *Id.*  Counts I and II of the complaint are identical and outline the chronology of events from

10   January 11 through February 25, 2006 concerning defendants' decision to permit protective custody

11   inmates to enter the sacred ground and sweat lodge for religious rituals and to use cooking utensils and

12   wood belonging to plaintiffs.  *Id.* at pp. 8-11 (Count I) and pp.12-15 (Count II).  Plaintiffs further allege

13   in Counts I and II that defendants denied plaintiffs access to the sacred grounds and sweat lodge because

14   they lacked an outside Native American sponsor, but defendants allowed the protective segregation

15   inmates access to the sacred grounds when they did not have an outside Native American sponsor.  *Id.*

16   at p. 13, ¶¶ 3 & 4.  The gravamen of Counts I and II is that allowing protective segregation inmates to

17   enter what plaintiffs claim is their religious sacred ground is a desecration, adverse to plaintiffs' religious

18   beliefs, and violates the Mickel Decree.  *Id.; see generally*, Count I at pp. 8-11.

19           Count III of the complaint outlines alleged violations of plaintiffs First Amendment right of

20   religious freedom, as well as the provisions of the Mickel Decree.  These events occurred from November

21   2004 through February 2006 and plaintiffs reiterate many of the allegations found in Count I and II.  *Id.*

22   at 16-24.  However, they further allege that defendants or their employees removed items from the sweat

23   lodge area, confiscated a freezer used to store meat for religious rites, confiscated the bald eagle tail

24   feathers from a member of the Circle, restricted the use of water for Native American plunge pools,[2]

25   denied inmates in plaintiffs' Circle the right to attend a funeral service in honor of an inmate's late

26

27           [2]Plaintiffs concede that within one month, the utensils and use of the plunge pool were restored (#10 at 16-17).

28                                                    2

mother,[3] and that NDOC officials made a proposal for joint use of what plaintiffs deem their sacred grounds with protective segregation inmates and those practicing earth-based religions. *Id.* at 16-24.

In Count IV, plaintiffs allege violations of their First Amendment right of religious freedom and RLUIPA, generally allege that defendants have engaged in a practice of damaging, discarding and desecrating sacred religious artifacts and possessions necessary for their religious practices for the period from 1990 through 2006, and that defendants have retaliated against them for engaging in such religious practices. *Id.* at 26-28.

Defendants move to dismiss for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Allegations in a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*).

Before turning to the legal analysis and discussion of the issues before the court, it is necessary to review the decree and permanent injunction issued by Judge Reed in 1980 in "Dennis T. Mickel vs. Charles L. Wolff, Jr., et al.," Case No. CV-R-79-239-ECR ("Mickel Decree") and its subsequent history.

### A.    The Mickel Decree

### 1.    History from 1979 -2004

In 1979, Dennis Mickel, an inmate incarcerated at the NSP, filed a civil rights complaint after prison officials denied his request to attend American Indian Cultural Services (Mickel #1).[4] The parties to the Mickel Decree ultimately entered into a stipulation for settlement, which was the basis for the decree and permanent injunction issued by Judge Reed in December 1980 (Mickel #42)**.** The Mickel Decree secured certain rights for inmates incarcerated at NSP. First, it provided that those with a custody

---

[3]Inmate Jude Troy Czibok's mother passed away, and although NDOC staff initially denied Mr. Czibok, Mr. Mauwee, and Mr. Boice (presumably all members of the Circle) permission to attend a funeral ceremony on November 24, 2005, plaintiffs concede that after they filed an emergency grievance, the service was held on November 26, 2005, and the complaining parties were allowed to attend (#10 at 17-18).

[4]To avoid confusion regarding references to the Mickel Decree and the present proceeding, the court refers to papers filed in the Mickel case as "Mickel #___." The Mickel Decree is also attached as Exhibit A to defendants' current motion to dismiss (#13-2).

status of punitive and administrative segregation or protective custody could participate in the Native American religious practice known as the pipe ceremony. *Id.* at 1, section A. Second, it provided that general population inmates were permitted to attend the Native American practices known as the sweat lodge in the same manner as inmates in punitive and administrative segregation and protective custody. *Id.* at 2, section B. Third, it stated that an inmate designated as the pipe holder or sweat leader may conduct the pipe ceremony or the sweat lodge ceremony, respectively, without guidance or attendance of spiritual leaders from outside the institution. *Id.* at 2-3, section C. Fourth, NSP inmates were also permitted access to literature concerning Native American religious practices and ceremonies in the same manner as inmates from other religious traditions, and NSP was required to provide the materials for the construction and maintenance of a sweat lodge on NSP grounds. *Id.* at 3, section D.

In addition to the rights accorded NSP inmates, the Mickel Decree also outlined procedures for implementation of the Mickel Decree at NSP, distribution of the new policy to NSP inmates, and a protocol for the resolution of disputes concerning the interpretation of the Mickel Decree. *Id.* at 3-4. As to successors in interest, the Mickel Decree only refers to the defendants and states:

> IT IS FURTHER ORDERED, that the *defendants*, their successors in their respective official capacities, and those persons acting in concert with or under the direction or control of the defendants or their successors in their respective official capacities, are permanently enjoined and restrained from taking any action contrary to the provisions of this Decree and Permanent Injunction; . . .

*Id.* at 4-5 (emphasis supplied).

### 2.    2004 -2006: Settlement with Lovelock Correctional Center Inmates

On August 22, 2006, this court issued a report and recommendation concerning a motion to compel filed by the same plaintiffs in this current proceeding, namely, Mr. Mauwee and the Circle (Mickel #140).  This court took that opportunity to recount the history of the Mickel Decree in the ensuing twenty-seven years, since inmates incarcerated at various NDOC institutions have sought to enforce or limit its provisions.  Over the years, the District Court consistently took the position that the Mickel Decree did not pertain to inmates who were not a party to the Mickel Decree (Mickel #52), that the Mickel Decree should not be construed as a class action and concerned only Dennis Mickel (Mickel

1    #58), and that the Mickel Decree concerns only NSP and not other prisons wihin the NDOC system

2    (Mickel #64).

3         In 1999, the District Court issued an order which is particularly relevant to the present action.

4    The Northern Continental Spiritual Circle Council - the "Circle" plaintiffs in this action - filed a notice

5    to the court (Mickel #65), which stated that Mr. Mickel was no longer incarcerated; therefore, it requested

6     that Mr. Mickel be removed as the plaintiff in the Mickel Decree, and that the Circle itself and its current

7    members – Duane Fielder, Eugene Mauwee, Sr., Dennis Murphy, and Ramiro Vela – be inserted in his

8    place (Mickel #65).  The District Court rejected this request and stated:

9              **IT IS HEREBY ORDERED** that the notice to the Court
              re request for a name change in the within action (#52) is
10             **DENIED**. Regrettably, the legal status of the spiritual
              Circle is too uncertain to designate it as a representative
11             of the Class. It does not appear that the change of plaintiff
              is of benefit to members of the class or necessary for their
12             protection under the consent decree.

13   (Mickel #67).

14        Five years later, in 2004, several protective segregation inmates ("movants") housed at Lovelock

15   Correctional Center ("LCC") filed a motion for hearing for violations of the Mickel Decree (#68), and

16   the District Court directed the Attorney General's office to respond (Mickel #69).  Thereafter, the District

17   Court entered an order to advise that Patrick Flanagan, Esq. had agreed to accept appointment in this

18   action as counsel for the movants on a pro-bono basis (Mickel #86).  In June 2005, the District Court

19   granted a motion for a settlement conference and referred the settlement conference to this court (Mickel

20   #103).

21        In August 2005, the movants were transferred from LCC to NSP (Mickel #113, 133, Ex. H).

22   Although the movants withdrew their initial motion to compel, the parties agreed to proceed with

23   settlement discussions (Mickel #116).   In November 2005, this court commenced a settlement

24   conference, which was the first of four meetings held over the ensuing eight months (Mickel #140).

25   During these settlement conferences, the parties discussed disputes that had arisen at NSP between the

26   general population inmates and protective segregation inmates over the use of Native American religious

27   grounds. *Id.*  The parties engaged in extensive discussions about revisions to Administrative Regulation

28                                                5

1    809 ("AR 809"), which governs Native American religious practices. *Id.*  The parties also invited

2    members of the Nevada Indian Commission to attend the settlement conferences to provide advice to

3    the parties and the court regarding Native American religious rites and customs. *Id.*  It was as a result

4    of these extensive discussions that NDOC promulgated a new draft of AR 809, and the parties also

5    resolved several concerns relating to such religious practices. *Id.*   NDOC officials anticipated that

6    proposed revisions to AR 809 would be formally adopted in November 2006.  *Id.*

7         In January 2006, after these settlement discussions had begun, the current plaintiffs, Mr. Mauwee

8    and the Circle, filed a motion for order to compel by which they asked the court to enjoin the movants

9    (protective and administrative segregation inmates) from entering the Native American religious grounds

10   at NSP because they contended that they alone were successors to the Mickel Decree, had established

11   the sacred grounds for their Circle, and that it was a desecration to allow a second circle to participate

12   in spiritual services on these grounds (Mickel #119).

13        However, after NDOC relocated the protective segregation inmates to NSP in August 2005,

14   NDOC officials determined that the relocation had resulted in increased tensions between general

15   population or protective segregation inmates generally, and that disputes had also arisen over the use

16   of Native American religious grounds (Mickel #133, Ex. H).  The relocation also reduced the amount

17   of yard time for general population inmates, which further increased tensions. *Id.*  In May 2006, most

18   of the protective segregation inmates were transferred from NSP back to LCC where they were provided

19   their own religious grounds. *Id.*  The only protective segregation inmates remaining at NSP are those

20   receiving medical treatment or who are required to be housed there pursuant to court orders. *Id.*

21        This court denied the motion of Mr. Mauwee and the Circle, the current plaintiffs in the action,

22   for two reasons.  First, the District Court had repeatedly held that the real party in interest in the Mickel

23   Decree is Dennis T. Mickel, and that inmates who were not parties to the Mickel action must proceed

24   through alternative means (Mickel #s 52, 58, 64 & 67).  In fact, the District Court specifically denied

25   Mr. Mauwee and the Circle's request to be substituted in as plaintiffs; therefore, they lacked standing

26   to file motions in Mickel (Mickel #140).

27

28
                                              6

1      Second, this court held that Mr. Mauwee and the Circle's motion was moot because NDOC had

2 relocated the protective segregation inmates back to LCC, which meant that the general population

3 inmates at NSP were no longer required to share their religious grounds. *Id.*  In affirming this court's

4 report and recommendation, the District Court specifically stated, "Movants Mr. Eugene Mauwee, Sr.,

5 and the Northern Continental Spiritual Circle Council - Nevada State Prison are not a party to this case"

6 (Mickel #141).[5]

7      It was while the current plaintiffs' motion to compel in the Mickel action was pending and during

8 the ongoing settlement discussions with the movants that the plaintiffs filed their complaint in this case,

9 which defendants now move to dismiss for failure to state a claim for relief pursuant to Fed.R.Civ.P.

10 12(b)(6).

11     **II.  Discussion and Analysis**

12          **A.**    **Discussion**

13               **1.**    **Motion to dismiss for failure to state a claim**

14      When considering a motion to dismiss for failure to state a claim upon which relief may be

15 granted, all material allegations in the complaint are accepted as true and are construed in the light most

16 favorable to the non-moving party. *Barnett v. Centoni,* 31 F.3d 813, 816 (9th Cir. 1994); *Russell v.*

17 *Landrieu,* 621 F.2d 1037, 1039 (9th Cir. 1980).  For the movant to succeed, it must appear beyond a doubt

18 that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Barnett,*

19 31 F.3d at 815; *see also Rotherman v. Vedder Mark Mgt.,* 912 F.2d 315, 316 (9th Cir. 1990).

20      Under Section 1983, plaintiff must allege that (1) defendants subjected him to the deprivation

21 of a right, privilege or immunity guaranteed by the U.S. Constitution or U.S. law, and (2) that the

22 defendant acted under color of state law.  *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Crumpton v.*

23 *Gates,* 947 F.2d 1418, 1420 (9th Cir. 1991).  "Conclusory allegations, unsupported by facts, [will be]

24 rejected as insufficient to state a claim under the Civil Rights Act.'" *Jones v. Community Redevelopment*

25

26        [5]Defendants state that while Mr. Mauwee was incarcerated at NSP, he "arguably" had standing

27 to enforce the Mickel Decree (#13 at 8).  This is incorrect, as the District Court specifically decided otherwise (Mickel #141).

28                        7

*Agency,* 733 F.2d 646, 649 (9th Cir. 1984) (quoting *Sherman v. Yakaki,* 549 F.2d 1287, 1290 (9th Cir.

1977)). "The plaintiff must allege with at least some degree of particularlity overt acts which defendants

engaged in that support the plaintiff's claim." *Id.,* quoting *Powell v. Workmen's Compensation Board,*

327 F.2d 131, 137 (2d Cir. 1964).

### 2.      Issue Preclusion

"The principle of issue preclusion is simply that later courts should honor the first actual decision

of a matter that has been actually litigated." 18 C. Wright, A. Miller & A. Cooper, *Federal Practice &*

*Procedure: Jurisdiction* § 4416, at 386 (2002) (hereafter "18 Wright & Miller").  In *Southern Pacific*

*Railroad v. United States,* Justice Harlan explained:

> The general principle announced in numerous cases is that a right,
> question, or fact distinctly put in issue and directly determined by a court
> of competent jurisdiction, as a ground of recovery, cannot be disputed in
> a subsequent suit between the same parties or their privies; and, even if
> the second suit is for a different cause of action, the right, question, or fact
> once so determined must, as between the same parties or their privies, be
> taken as conclusively established, so long as the judgment in the first suit
> remains unmodified.

168 U.S. 1, 48-49 (1897).  The doctrine of issue preclusion prevents relitigation of all "issues of fact or

law that were actually litigated and necessarily decided" in a prior proceeding. *Segal v. A.T.&T, Co,* 606

F.2d 842, 845 (9th Cir. 1979), quoted in *Americana Fabrics, Inc. v. L&L Textiles, Inc.*, 754 F.2d 1524,

1529 (9th Cir. 1985).  The party against whom issue preclusion is asserted must have litigated and lost

in an earlier action, *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329 (1979), and the issues "must have

been actually decided after a 'full and fair opportunity' for litigation."  *Robi v. Five Platters, Inc.,* 838

F.2d 318, 322 (9th Cir. 1988) (citing 18 Wright & Miller).

Since standing is not a "claim" but an "issue;" "[f]or issue preclusion to bar relitigation, the issues

must be identical, actually litigated, and necessarily decided."  *Gospel Missions of America v. City of*

*Los Angeles,* 328 F.3d 548, 553 (9th Cir.2003) (citations omitted).

### B.      Analysis

A threshold issue in this action is whether Mr. Mauwee and the Circle have standing to bring

this action as successors in interest to Dennis T. Mickel, the original plaintiff in that proceeding.

8

1   Plaintiffs allege throughout their complaint that they are the successors in interest to the plaintiff in

2   *Mickel. See, e.g.,* #10 at 1, 5, 10, 11, 12, 14, 15 & 22.  Plaintiffs also repeatedly allege that based on their

3   alleged status as the successors in interest to the plaintiff in *Mickel,* the defendants violated the terms

4   of the Mickel Decree and their First Amendment rights, RFRA and RLUIPA.  *See*, *e.g., Id.* at 4, 5, 6,

5   7, 9, 13, 18 & 21.

6          As noted earlier, in 1999 Mr. Mauwee and the current members of the Circle filed a notice with

7   the District Court by which they requested that they be substituted in place of Mr. Mickel, and the Court

8   rejected that request (Mickel #67).  In denying what was styled as a request for a name change, the Court

9   stated, "Regrettably, the legal status of the spiritual Circle is too uncertain to designate it as a

10  representative of the Class. It does not appear that the change of plaintiff is of benefit to the members

11  of the class or necessary for their protection under the consent decree" (Mickel #67).  Since it does not

12  appear from the record that defendants objected to Mr. Mauwee and the Circle's attempt to substitute

13  themselves in as plaintiffs, this court finds that there is a legitimate question whether it can be said this

14  issue was litigated and lost after an opportunity for a hearing; therefore, issue preclusion does not apply.

15         However, in January 2006, Mr. Mauwee and the Circle filed a motion to compel by which they

16  sought to invoke the Mickel Decree to enjoin protective segregation inmates from sharing the Native

17  American religious grounds at NSP, and once again asserted their claim as successors in interest to Mr.

18  Mickel (Mickel #119).  Defendants responded and specifically challenged the movants' standing to bring

19  their motion (Mickel #136).  This court denied the motion in a report and recommendation, and the

20  District Court not only affirmed, but also specifically stated, "**IT IS FURTHER ORDERED** that the

21  Motion for Order to Compel (#119), filed by third-party movants Mr. Eugene A. Mauwee, Sr., and the

22  Northern Continental Spiritual Circle Council - Nevada State Prison is **DENIED**.  Movants Mr. Eugene

23  Mauwee, Sr., and the Northern Continental Spiritual Circle Council - Nevada State Prison *are not a party*

24  *to this case"* (Mickel #141) (italics added).

25         This court finds that the current plaintiffs litigated and lost on the issues concerning whether they

26  are successors in interest to Mr. Mickel and, thus, have no authority to litigate enforcement of the Mickel

27

28                                                        9

1   Decree. *Robi v. Five Platters,* 838 F.2d 318, 322.  Based on the foregoing, the court recommends that

2   plaintiffs' complaint be dismissed without prejudice and with leave to amend their complaint.

3        The court notes that plaintiffs bring their claims pursuant to Section 1983, RLUIPA, and RFRA,

4   and the plaintiffs may have viable claims if brought without reference to the Mickel Decree and without

5   denominating themselves as Mr. Mickel's successors in interest.  In the event the District Court adopts

6   this report and recommendation and grants plaintiffs leave to file an amended complaint, there are several

7   matters plaintiffs should address.  First, Counts I and II are identical; therefore Count II is redundant and

8   it would have been dismissed had issue preclusion not compelled the court to recommend dismissal of

9   the entire action.  Second, Count IV refers to events that occurred as far back as 1990, but such claims

10  may be barred by the statute of limitations (#10 at p. 25-28).  Third, in Count III, plaintiffs identify certain

11  individuals – Jude Troy Czibok and Rocky Boice, Jr – but they are not named as plaintiffs.  To the extent

12  these individuals and other inmates are members of the Circle, they should be named as individual

13  plaintiffs in this action.

14       Finally, and perhaps most important, the relocation of the protective segregation inmates back

15  to LCC and the promulgation of a revised AR 809 may render some of plaintiffs' claims moot, or at

16  least subject to major revision.  The court notes that plaintiffs' complaint was filed on July 18, 2006,

17  while this court was engaged in ongoing settlement discussions in the Mickel case with the protective

18  segregation movants, defendants, and the Nevada Indian Commission.  These developments would no

19  doubt affect plaintiffs' claims should they be given leave to amend.

20       Based upon the foregoing, this court recommends that defendants' motion to dismiss (#13) be

21  granted and that plaintiffs' complaint be dismissed without prejudice with leave to amend for the reasons

22  set forth herein.

23       The parties should be aware of the following:

24       1.       They may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules

25  of Practice, specific written objections to this Report and Recommendation within ten (10) days of

26  receipt.       These objections should be titled "Objections to Magistrate Judge's Report and

27

28                                                                   10

1    Recommendation" and should be accompanied by points and authorities for consideration by the District

2    Court.

3         2.      This Report and Recommendation is not an appealable order, and any notice of appeal

4    pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

5    **III.**    **Recommendation**

6         For the reasons stated above, the undersigned Magistrate Judge recommends that the District

7    Judge enter an order **GRANTING** defendants' motion to dismiss (#13) and **DISMISSING** plaintiffs'

8    complaint without prejudice and with leave to amend for the reasons set forth herein.

9         DATED:   January 31, 2007.

10

11   _____

12   UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11