1

2

3

4          **UNITED STATES DISTRICT COURT**

5          **DISTRICT OF NEVADA**

6

7   EUGENE A. MAUWEE, Sr.,            )
                                      )        3:06-cv-00122-RCJ-VPC
8                  Plaintiff,         )
                                      )
9          vs.                        )        **ORDER**
                                      )
10  BILL DONAT et al.,                )
                                      )
11                 Defendants.        )
    _____ )

12

13         Pending before the Court is Magistrate Judge Valerie P. Cooke's ("MJ") Report and

14  Recommendations (R&R) (#77) regarding Defendants' Motion for Summary Judgment (#70).  The

15  R&R recommend that the Motion (#70) be granted in part and denied in part.  After review of the

16  Motion, R&R, and relevant responses and replies thereto, the Motion (#70) is GRANTED.

17  **I.     FACTS AND PROCEDURAL BACKGROUND**

18         **A.     First Complaint**

19         On March 7, 2006, Plaintiff Eugene Mauwee, Sr., a *pro se* litigant currently residing at

20  Lovelock Correctional Center ("LCC"), filed a complaint in this Court pursuant to 42 U.S.C. § 1983

21  against Defendants Bill Donat, Warden Nevada State Prison ("NSP"); James Baca, Assistant

22  Warden of Programs, NSP; and Nevada Department of Corrections ("NDOC").  That complaint

23  listed four counts, each premised under the First and Fourteenth Amendments to the United States

24  Constitution and the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §

25  2000bb(a)(3) and (b)(1). (#1-2).  Counts I and II were against Defendants Donat and Baca, while

Counts III and IV were against NDOC.  Each Count in reality contains many counts, but Plaintiff consolidated these many counts into four groups.

### 1.  Count I

Count I claimed that Defendant Donat directed Defendant Baca to allow protective custody ("PC") inmates at NSP, most of whom were non-Indians, to use the "Sweat Lodge" area at NSP, an area previously used only by particular Indian inmates for their religious ceremonies and activities.  Plaintiff claims this resulted in "desecration" of the Sweat Lodge area.  Plaintiff further claimed that Defendant Baca retaliated against him for filing grievances, by removing garden stakes from the prison yard under the pretense that they could be fashioned into weapons, and that these stakes were put into the Sweat Lodge area to be burned in ceremonies, further desecrating the area.  Plaintiff claimed that his current "Tribe–The Northern Continental Spiritual Circle Council" ("Spiritual Circle") is the successor to the former "Native American Religious Observances and Ceremonies 'Sweat Lodge' at Nevada State Prison in 1978," which was the benefactor of a 1980 decree issuing from Judge Edward C. Reed of this Court.  At the end of Count I, Plaintiff added the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000(1)(a) and (a)(2)(c), to the bases for his claim.

### 2.  Count II

Count II was an identical claim against Defendant Baca.

### 3.  Count III

Count III was a claim against NDOC for removing pots and pans and dismantling cooking stations in the Sweat lodge area in late 2004, thereby substantially burdening the free exercise of religion of the Indian inmates who used the Sweat Lodge.  The Count also claimed that Defendant Baca had amended Administrative Regulation ("AR") 810, which altered the way in which water could be used in the Sweat Lodge, substantially burdening the free exercise of religion.  These grievances were remedied by Defendants soon thereafter.  In late 2005, Defendants

confiscated a freezer used to store deer and elk meat, buffalo fish, and salmon fish, which were to be used for religious ceremonies, substantially burdening the free exercise of religion.  The Count then claims that on November 24, 2005, Defendants refused to allow Jude Troy Czibok access to a religious ceremony, substantially burdening his free exercise of religion. Czibok is not a Plaintiff in this action.  Defendants later allegedly denied members of the Spiritual Circle access to the Sweat Lodge area, substantially burdening the free exercise of religion, and also allowed PC inmates to enter the Sweat Lodge area for their own ceremonies, desecrating the area.  The Count then claims that Defendants either denied possession to or confiscated from inmate Robert Steven Buff religious artifacts and materials, substantially burdening the free exercise of religion.  None of these inmates is a plaintiff in this case.  Finally, the Count complains that Defendants allowed other Indian spiritual circles to use the Sweat Lodge area, further desecrating it.

### 4.    Count IV

Count IV claims that Defendants either denied possession to or confiscated from various inmates religious artifacts and materials, substantially burdening the free exercise of religion.  None of the inmates listed are plaintiffs in the present action.  The Count then claims that many of NDOC's actions have been in retaliation against Indian inmates for exercising their religious beliefs.  Plaintiff claims he was transferred from Ely State Prison ("ESP") to NSP in retaliation for ordering a golden eagle to be placed in the ESP Sweat Lodge area.  Finally, Plaintiff reiterates his "desecration" claims.

### B.    Dismissal Without Prejudice

On May 15, 2007, this Court adopted the MJ's R&R (#24) to dismiss the case without prejudice and with leave to amend. (#34).  Those R&R noted that Plaintiff was not the legal successor in interest to any person or organization with rights enforceable under the Mickel Decree, issued in Case No. CV-R-79-239-ECR.  That decree outlined the rights of Indian inmates at NSP to participate in religious ceremonies.  This Court adopted the MJ's R&R that Plaintiff was

1  collaterally estopped from relitigating his standing to litigate enforcement of the Mickel Decree.
2  (#24 at 9:25–10:2).

3  **C.      Fourth Amended Complaint**

4        Plaintiff filed several amended complaints, concluding with the current Fourth Amended
5  Complaint, filed on July 30, 2007. (#40).  That complaint lists two counts against Defendants Donat,
6  Baca, and NDOC.  Both counts are considerably more concise and limited than the original claims
7  in the first complaint.  Plaintiff bases his Fourth Amended Complaint on RFRA and RLUIPA.

8        **1.      Count I**

9        In Count I, Plaintiff complains that in January 2006, Defendants informed Plaintiff
10 that PC inmates would be allowed to use the Sweat Lodge area at NSP, and that when Plaintiff
11 complained about this, he and other general population ("GP") inmates were denied access to the
12 area, while PC inmates were allowed to use it.  Defendants also denied the Spiritual Circle
13 (alternately referred to as "the Tribe") use of the plunge pool, requiring them to use a bucket and
14 hose instead.  Defendants also confiscated religious artifacts needed for the Sweat Lodge
15 ceremonies.  Plaintiff claims this was a violation of "the permanent injunction" (likely a reference
16 to the Mickel Decree, which the Court has already noted cannot be invoked by Plaintiff) and AR
17 809. Plaintiff argues that these actions constituted "desecration and destruction" of the Sweat Lodge
18 area. (#40 at 6).  Plaintiff notes that Defendants transferred the PCs from NSP to LCC, ceasing use
19 of the Sweat Lodge area by persons not welcome by the Spiritual Circle.

20       **2.      Count II**

21       In Count II, Plaintiff claims Defendants retaliated against him for exercising his First
22 Amendment Rights by transferring him without cause from NSP to LCC, resulting in the loss of a
23 prison job, preferred housing, reduced frequency of visitation, loss of property, temporary
24 confiscation of religious artifacts upon arrival to LCC, and delays or denial at LCC of Plaintiff's
25 attempts to acquire religious artifacts.

### 3.    Request for Relief

Plaintiff requests injunctive relief, compensatory relief of at least $10,000 per defendant, punitive damages not to exceed a single-digit multiplier of any compensatory damages awarded, costs and fees, and any other equitable relief as determined by the Court. (#40 at 12).

### D.    Motion for Summary Judgment

On October 15, 2008, Defendants filed the present Motion for Summary Judgment. (#70). With respect to Count I, Defendants claim that the Sweat Lodge area was used by both the Spiritual Circle (on Sundays) and the PC inmates (on Saturdays) for an eight-month period from September 2005 to May 2006. Defendants note that PC inmates have the same rights to practice their chosen religion as members of the Spiritual Circle do. Defendants admit that the Spiritual Circle was refused the ability to use the Sweat Lodge area for a period after Warden Donat introduced a requirement for an outside sponsor (to ensure supervision). But Defendants note that the restriction was lifted when a number of religious groups were unable to secure an outside sponsor. Defendants claim that the Spiritual Circle's cooking utensils were confiscated pursuant to health concerns. Under the new regulations, the Spiritual Circle members were to use a check-out system for their utensils, so that they could be sanitized between uses. PC Indian inmates used the new system, but GP Indian inmates declined.

With respect to Count II, Defendants claim Plaintiff was transferred to LCC not in retaliation for his grievances, but for "safety and security concerns" due to his failure to cooperate in a homicide investigation wherein investigators believed Plaintiff was not forthcoming, that Plaintiff was simply transferred from one medium-security prison to another, and that he has no liberty interest in the location of his incarceration.

Defendants also argue that the Eleventh Amendment bars suit against NDOC and against Donat and Baca acting in their official capacities. Finally, Defendants claim qualified immunity on

1    the issue of access to the Sweat Lodge area by PC inmates, due to the lack of clarity of the law in

2    this area.

3    **III.    ANALYSIS**

4        **A.    Summary Judgment Standard**

5        The Federal Rules of Civil Procedure provide for summary adjudication when "the

6    pleadings, depositions, answers to interrogatories, and admissions on file, together with the

7    affidavits, if any, show that there is no genuine issue as to any material fact and that the party is

8    entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may

9    affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A

10   dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return

11   a verdict for the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate

12   and dispose of factually unsupported claims." *Celotex Corp.,* 477 U.S. at 323–24 (1986).

13       In a summary judgment posture, the Court must consider the parties' respective burdens.

14   "When the party moving for summary judgment would bear the burden of proof at trial, it must

15   come forward with evidence which would entitle it to a directed verdict if the evidence went

16   uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the

17   absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co.,*

18   *Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when

19   the nonmoving party bears the burden of proving the claim or defense, the moving party can meet

20   its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving

21   party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient

22   to establish an element essential to that party's case on which that party will bear the burden of proof

23   at trial. *See Celotex Corp.,* 477 U.S. at 323–24.  If the moving party fails to meet its initial burden,

24   summary judgment must be denied and the court need not consider the nonmoving party's evidence.

25   *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

1    If the moving party meets its initial responsibility, the burden then shifts to the opposing

2    party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita*

3    *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a

4    factual dispute, the opposing party need not establish a material issue of fact conclusively in its

5    favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve

6    the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors*

7    *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid

8    summary judgment by relying solely on conclusory allegations that are unsupported by factual data.

9    *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the

10   assertions and allegations of the pleadings and set forth specific facts by producing competent

11   evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Celotex Corp.*, 477

12   U.S. at 324.

13   When considering a summary judgment motion, the Court examines the pleadings,

14   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

15   Fed. R. Civ. P. 56(c).  At summary judgment, the judge's function is not to weigh the evidence and

16   determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477

17   U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to

18   be drawn in his favor." *Id*. at 255.  But, if the evidence of the nonmoving party is merely colorable

19   or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

20   **B. RLUIPA**

21   RLUIPA expands rights under the First Amendment's Free Exercise Clause, mandating that:

22   No government shall impose or implement a land use regulation in a manner that
     imposes a substantial burden on the religious exercise of a person, including a
23   religious assembly or institution, unless the government demonstrates that imposition
     of the burden on that person, assembly, or institution–
24   (A) is in furtherance of a compelling governmental interest; and
     (B) is the least restrictive means of furthering that compelling governmental interest.

25

42 U.S.C. § 2000cc(a)(1).  Because Planitiff's rights under RLUIPA are greater than his rights under the First Amendment, the Court analyzes his claims under the RLUIPA standard for the purposes of a summary judgment motion.

A plaintiff under RLUIPA must show that a defendant placed a "substantial burden" on his "religious exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005).  If a plaintiff makes this showing, the defendant must show that the burden furthers a compelling governmental interest and is the least restrictive means available of furthering that interest. *Id.* at 995.  A burden is substantial under RLUIPA "when the state denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Shakur v. Schiro*, 514 F.3d 878, 888 (9th Cir. 2008) (internal quotation marks omitted).  Offending sensibilities alone cannot "substantially burden" free exercise in this Circuit. *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1067 (9th Cir. 2008) (en banc).  In that case, the Ninth Circuit held that the claimed desecration of a mountain through the use of artificial snow made from recycled wastewater did not meet the "substantial burden" test of RFRA because it "[neither] coerce[d] plaintiffs to act contrary to their religious beliefs under the threat of sanctions, nor [conditioned] a governmental benefit upon conduct that would violate their religious beliefs . . . ." *Id.*  The *Navajo Nation* Court noted that it was not deciding whether the "substantial burden" test was the same under both RFRA and RLUIPA cases, *id.* at 1077 n.23, but it almost certainly is.  The *Navajo Nation* Court did not strictly need to decide that issue, but the Court notes that RFRA uses the same "substantial burden" language as RLUIPA.

## C.    Analysis

### 1.    Eleventh Amendment Immunity

RLUIPA conditions receipt of federal prison funds on waiver of Eleventh Amendment Immunity. *Madison v. Virginia*, 474 F.3d 118, 130–31 (4th Cir. 2006).  However, the text of RLUIPA is only clear enough to waive immunity as to injunctive action, not as to monetary

damages. *Id.* at 131–32 (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996) (noting that the scope of a waiver of sovereign immunity is strictly construed in favor of the sovereign)); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 330–31 (5th Cir. 2009); *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009). The *Madison* court held that the "appropriate relief" language of 42 U.S.C. § 2000cc-2(a) was not unambiguous enough to construe this waiver of sovereign immunity as permitting monetary damages. *Id.* Most recently, the Seventh Circuit has followed suit. *See Nelson v. Miller*, 570 F.3d 868, 884–85 (7th Cir. 2009). The Eleventh Circuit is apparently alone in holding to the contrary. *See Smith v. Allen*, 502 F.3d 1255, 1275–76 (11th Cir. 2007). Although the Ninth Circuit has not ruled on the issue, the weight of authority in the sister Circuits overwhelmingly favors the conclusion that RLUIPA operates as a waiver of sovereign immunity as to equitable relief only. In this regard, the R&R are not adopted, and Plaintiff may not pursue monetary damages against NDOC or other Defendants in their official capacities under RLUIPA.

Furthermore, the Fourth Circuit has gone on to hold that "when invoked as a spending clause statute," RLUIPA does not even authorize monetary damages against persons in their *individual* capacities. *Rendelman v. Rouse*, 569 F.3d 182, 184 (4th Cir. 2009). In that case, the Fourth Circuit cited to the "clear notice" requirement for sovereign immunity waiver. *See Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 17 (1981). "The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Id.* The Fourth Circuit reasoned that Congress did not under RLUIPA give clear notice that "government" under RLUIPA could include individuals acting under color of state law, and that this would be a "novel use" of the spending clause. *Rendelman*, 569 F.3d at 188–89.

The only case within the Ninth Circuit to address the issue in *Rendelman* appears to be *Sokolsky v. Voss*, No. 07-CV-00594, 2009 WL 2230871 (E.D. Cal. July 24, 2009). That court found contrary to *Rendelman* based on the fact that the Ninth Circuit allows clams for monetary damages against individuals in their personal capacities under 42 U.S.C. § 1983. *Id.* at *6. This comparison

1  is unfair.  The text of § 1983 states unambiguously that "*Every person* . . . shall be liable to the party

2  injured in an *action at law*, suit in equity, or other proper proceeding . . . ." 42 U.S.C. § 1983

3  (emphases added).  The immunity stripping language in § 1983 clearly identifies that the scope of

4  the waiver applies to monetary damages against individuals.  Furthermore, § 1983 was passed

5  pursuant to Congress' power under § 5 of the Fourteenth Amendment, which grants Congress a

6  much more sweeping ability to strip Eleventh Amendment immunity than does the pre-Eleventh

7  Amendment spending power. *See generally Seminole Tribe of Florida v. Florida*, 517 U.S. 44

8  (1996).  As discussed above, the text of RLUIPA, as opposed to that of § 1983, addresses

9  "government[s]," not "[e]very person."  Moreover, it mentions only "appropriate relief," not "an

10  action at law."  Finding no appellate case law on point in this Circuit, the Court agrees with the

11  reasoning in *Rendelman*, the sole Court of Appeals case to address the issue, over the reasoning of

12  its sister district court in *Sokolsky*.

13      The R&R does not adequately address this distinction between equitable and monetary relief

14  under RLUIPA.  The relevant case law makes clear that the weight of authority is heavily against

15  waiver of sovereign immunity as to damages under RLUIPA.  Having granted Defendants summary

16  judgment as a matter of law on Plaintiff's damages claims under RLUIPA, both in their official and

17  individual capacities, the Court now considers the remaining claims for injunctive relief.

18                    **2.    Qualified Immunity**

19      Defendants claim qualified immunity as to Count II.  Under *Saucier v. Katz*,

20  the district court uses a two-step procedure to determine whether an official is entitled to qualified

21  immunity: (1) the court asks whether there has been a constitutional violation; and (2) if so, the court

22  asks whether the state of the law was clear such that a reasonable person in the defendant's position

23  should have known his actions violated the plaintiff's rights. 533 U.S. 194, 201 (2001).  Under

24  *Pearson v. Callahan*, it is within the sound discretion of the district court (or court of appeals) which

25  *Saucier* step to analyze first; the court may examine the qualified immunity step first in order to

1  avoid constitutional holdings where a defendant will be free from liability due to qualified immunity

2  in any case. 129 S. Ct. 808, 818 (2009).

3       Here, the Court chooses in its sound discretion under *Pearson* to determine the second

4  *Saucier* prong first, and it finds that a reasonable person in Defendants' position would not have

5  known that his actions as to Count II violated any of Plaintiff's rights enforceable under RLUIPA.

6  The MJ's recommendations in this regard are rejected.  The R&R rely heavily on AR 809 and AR

7  810 to identify Plaintiff's rights.  But the measure of Plaintiff's rights to exercise his religion are the

8  First Amendment and RLUIPA, not AR 809 and AR 810.  These regulations are potential sources

9  of due process rights, but not of free exercise rights.  Accordingly, Plaintiff could plausibly bring

10  a due process claim under § 1983 based on a violation of AR 809 or AR 810, *see Williams v. Lane*,

11  851 F.2d 867, 880–81 (7th Cir. 1988), but he has not done so, and he cannot shoe-horn in a due

12  process claim under RLUIPA in order to avail himself of RLUIPA's strict standards simply because

13  the AR have to do with religion.  With the AR 809 and AR 810 arguments removed from the R&R,

14  it is clear that the state of the law regarding Plaintiff's rights to require Defendants to exclude non-

15  Indian inmates from the Sweat Lodge area was and is not clearly established.

16       The state of the law regarding the forced exclusion of non-Indian persons from Indian

17  religious ceremonies is not entirely clear, and to any extent it is clear, it is clear *in favor of*

18  Defendants' actions.  Defendants point out the lack of clarity in the law (#78 at 2, 5–7) and the fact

19  that there is not only a lack of clarity in the law, but that a cursory equal protection and free exercise

20  examination indicates that more likely then not, it would actually be a violation of the rights of non-

21  Indian inmates to refuse them the ability to engage in traditionally Indian ceremonies, just as it

22  would be a violation of one's equal protection and free exercise rights to refuse to allow a non-Jew

23  to participate in Judaic ceremonies or a non-Italian to participate in Catholic ceremonies, for

24  example. *See Combs v. Corrections Corp. of America*, 977 F. Supp. 799 (W.D. La. 1997).

25

1    The first post-RLUIPA appellate decision is in accord that a non-Indian inmate cannot be

2    denied the right to participate in traditionally Indian ceremonies due to his lack of Indian heritage.

3    *Morrison v. Garraghty*, 239 F.3d 648, 661 (4th Cir. 2001).  This is a commonsense interpretation.

4    The right to free exercise of one's religion clearly includes the right to *choose* one's faith

5    unrestricted by one's bloodline.  If the right to free exercise did not include this aspect (the right to

6    choose one's faith) it would be the opposite of a freedom—it would be bondage to the religion of

7    one's upbringing or ethnic heritage.  RLUIPA cannot constitutionally abrogate the right to choose

8    one's faith in the name of broadening the rights of another, because one has no free exercise right

9    to exclude another person from practicing the religion of that person's choice simply because it

10   offends him.  So the claim that allowing unwelcome persons to practice their religion on the same

11   ground as Plaintiff—the "desecration" claim—is legally unmeritorious.  *See Lyng v. Northwest*

12   *Indian Cemetery Protective Ass'n*, 485 U.S. 439, 448–51 (1988) (holding that no free exercise claim

13   lies based purely on desecration of sacred ground where one's own ability to practice is not impeded

14   or penalized).  The Free Exercise Clause is a shield.  It cannot be used as a sword to defeat the rights

15   of others to use their own property in legitimate ways.  *See id.* at 453.  Defendants cannot be

16   expected to have determined that it would be constitutionally acceptable to deny non-Indian inmates,

17   whether GP or PC, to engage in traditionally Indian ceremonies, simply because another inmate

18   objected based on their bloodline.

19   In this delicate situation, Defendants clearly took the route less likely to pose a constitutional

20   problem. Defendants therefore have qualified immunity as to the Count II claims.  Defendants

21   apparently have not claimed qualified immunity as to the Count I claims.  Although the prayer for

22   monetary relief under both Counts is resolved under the Eleventh Amendment, and the prayer for

23   injunctive relief under Count II is resolved under qualified immunity, the Court examines the merits

24   of both Counts under summary judgment for the record.

25

1

### 3.    The Merits

2

#### a.    Count I

3

##### i.    Policy Changes to Religious Activity

4           The R&R recommend summary judgment as to the temporary policy

5    changes enacted with regard to Plaintiff's use of the Sweat Lodge area.  The Court agrees with the

6    R&R that Defendants' actions were rationally related to legitimate penological interests under the

7    *Turner* factors.  Under these factors, there first must be a "'valid, rational connection' between the

8    prison regulation and the legitimate governmental interest put forward to justify it." *Turner v. Safley*,

9    482 U.S. 78, 89 (1987).  Second, there must be "alternative means of exercising the right . . . ." *Id.*

10   at 90.  Third, a court considers "the impact accommodation of the asserted constitutional right will

11   have on guards and other inmates, and on the allocation of prison resources generally." *Id.*

12           Here, the requirement of routine sanitization of cooking utensils and replacement of a

13   stagnant outdoor plunge pool with a bucket and hose system are related to the valid, rational purpose

14   of health and safety.  Both measures serve to prevent growth of bacteria dangerous to the health of

15   inmates, and the removal of the pool also is rationally related to safety.  Second, the alternative

16   means of exercising Plaintiff's rights are the utensil exchange system and the hose and bucket

17   system.  Third, accommodation of the asserted rights would require additional supervision by prison

18   staff.

19           The Court agrees that the factors weigh in favor of defendants.  But the Court does not weigh

20   the evidence at the summary judgment stage to come to a factual conclusion. *See Anderson*, 477 U.S.

21   at 249.  Defendants have not met their burden of summary judgment under a claim for injunctive

22   relief under RLUIPA.  In the judgment of the Court, there remains a genuine issue of material fact

23   as to whether Defendants substantially burdened Plaintiff's religious practice via the changes to use

24   of the Sweat Lodge area.  Plaintiff has adduced enough evidence (the basic facts of which

25   Defendants admit) concerning the regulations on use of the Sweat Lodge area such that this Court

1   cannot say there is no possibility that a fact-finder could find Defendants imposed a substantial

2   burden on Plaintiff's religious exercise without an attendant compelling governmental interest.  The

3   fact that the changes in Sweat Lodge procedures are rationally related to a legitimate penological

4   interest does not foreclose the possibility that they substantially burden Plaintiff's religious practice

5   under RLUIPA, which is a different test.

6          Hence, there would remain a genuine issue of material fact as to this claim if Defendants

7   were persisting in the challenged policy changes, but as the R&R note, Defendants have long

8   rescinded these policy changes, and Plaintiff has been transferred to LCC in any case (#77 at 11),

9   rendering any RLUIPA claim for injunctive relief moot. *See Darring v. Kincheloe*, 783 F.2d 874,

10  876 (9th Cir. 1986). Therefore, the Court grants summary judgment to Defendants on Plaintiff's

11  claim for injunctive relief.

12                    **ii.      Use of the Sweat Lodge Area by PC Inmates**

13         The R&R recommend against summary judgment as to the temporary

14  policy changes enacted with regard to Defendant's granting of permission of PC inmates to use the

15  Sweat Lodge area when Plaintiffs were not using it.  The R&R based this determination on the

16  assumption that monetary damages were available under this claim.  As discussed above, they are

17  not, and the Court agrees with the R&R to the extent that injunctive relief under this Count is not

18  available because Defendants have since remedied the situation by transferring PC inmates out of

19  NSP.  Therefore, the Court grants Defendants summary judgment on this claim.

20                    **b.      Count II**

21         The R&R note that under *Rhodes v. Robinson*, a retaliation claim includes five

22  elements: "(1) An assertion that a state actor took some adverse action against an inmate; (2)

23  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

24  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

25

1    correctional goal." 408 F.3d 559, 567–68 (9th Cir. 2004) (footnote omitted).  The Court adopts the

2    R&R regarding injunctive relief under Count II.

3         Defendants have presented evidence that negates essential elements (elements 2, 3, and 5

4    under *Rhodes*) of Plaintiff's Count II retaliation claim, satisfying Defendants' burden under the first

5    disjunctive prong of the *Celotex* summary judgment standard. *See Celotex Corp.*, 477 U.S. at

6    323–24.  The second and third elements of *Rhodes* require that the adverse action be taken because

7    of the prisoner's protected conduct, and the fifth element of a retaliation claim requires that the

8    action did not reasonably advance a legitimate correctional goal. 408 F.3d at 567–68.  Defendants

9    have introduced evidence in the form of affidavits to show that Plaintiff was suspected of having

10   material information about a homicide at NSP, and that he did not cooperate in the investigation.

11   (#70, Ex. B, C).

12        Defendants having met their burden, the burden shifts to Plaintiff to establish a genuine issue

13   of material fact as to retaliation.  Plaintiff argues in his Response (#74) that twenty other inmates

14   also refused to cooperate but were not transferred, and again that he was retaliated against.  These

15   conclusory claims are insufficient to avoid summary judgment. *Taylor*, 880 F.2d at 1045.  Nowhere

16   in the evidence attached to the Response does Plaintiff provide any evidence indicating retaliation.

17   There is no affidavit from Plaintiff or any disinterested witness.  The only exhibit that comes close

18   to constituting evidence is a copy of a response from NDOC to Plaintiff's internal grievance of

19   retaliation, wherein NDOC notes that Plaintiff's grievance could not be accepted as a legal

20   complaint because it was not signed and dated. (#74 at 100).  There is no evidence of threats of

21   retaliation or of any words indicating a retaliatory motive. *See, e.g.*, *Gomez v. Vernon*, 255 F.3d

22   1118, 1127 (9th Cir. 2001) (finding repeated threats of retaliation to be sufficient).  Having not met

23   his shifted burden under summary judgment, the Court adopts the R&R as to Count II and grants

24   summary judgment to Defendants.

25

**CONCLUSION**

For the reasons given herein, IT IS HEREBY ORDERED that the R&R (#77) are ADOPTED in part and REJECTED in part. The Eleventh Amendment bars Plaintiff's RLUIPA damages claims against all Defendants in both their official and individual capacities. Defendants have qualified immunity as to Plaintiff's claim for injunctive relief under Count II. Defendants' Motion for Summary Judgment (#70) as to Plaintiff's claim for injunctive relief under Counts I and II is GRANTED.

DATED:        September 17, 2009

_____
Robert C. Jones
United States District Judge